```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  1/11/08
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -x

GOULD PAPER CORPORATION,                :

                    Plaintiff,          :

                                                    **MEMORANDUM DECISION**
           - against -                  :

                                                    07 Civ. 6087 (DC)
ALEX GOMEZ and JOHN HUEMPFNER,          :

                    Defendants.         :

- - - - - - - - - - - - - - - - -x

**APPEARANCES:**    LAW OFFICES OF JACK HASSID
                    Attorneys for Plaintiff
                        By: Jack Hassid, Esq.
                    460 Park Avenue, 10th Floor
                    New York, NY  10022

                    ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP
                    Attorneys for Defendants
                        By: Franklin Alan Rothman, Esq.
                    100 Lafayette Street, Suite 501
                    New York, NY  10022

                    SILVERGBERG & ASSOCIATES, P.A.
                    Attorneys for Defendants
                        By:  Paul K. Silverberg, Esq.
                    2665 Executive Park Drive, Suite 2
                    Weston, Fl  33331

**CHIN, D.J.**

            Plaintiff Gould Paper Corporation ("Gould") brings this
action for breach of contract against defendants Alex Gomez and
John Huempfner, asserting that (1) they have refused to return
excess commissions they received in error and (2) Gomez breached
his fiduciary duty by diverting business to a Gould competitor.
Defendants move to dismiss the complaint for forum non conveniens
or, alternatively, to transfer the case to Florida pursuant to 28
U.S.C. § 1404(a).  For the reasons that follow, the motion is
denied in both respects.

**BACKGROUND**

A.  **Facts**

Gould is a New York corporation that sells paper in one of two ways: (1) by arranging direct shipments from a paper mill to its customers ("mill direct" sales) or (2) by selling paper from its own inventory ("warehouse" sales).  (Compl. ¶¶ 1, 6).  Gould also operates Gould Paper Florida ("GPF"), a separate division based in Florida that serves customers there and in the Carribean.  (Id. at ¶ 7).

Defendants worked as commission salespersons at GPF until June 16, 2006.  (Id. at ¶¶ 8-9).  During that time, they were subject to Gould's Policy Manual (the "Manual"), which provides for certain deductions and charges against a salesperson's commissions ("chargebacks").  (Id. at ¶ 18).  The Manual provides that Gould may chargeback a salesperson's commissions to compensate for overdue, reduced, or incomplete payments by the salesperson's customers.  (Id. at ¶¶ 18-20).

At the time of defendants' initial hire, GPF dealt exclusively with mill direct sales.  (Id. at ¶ 14).  In November 2002, defendants recommended that Gould purchase a warehouse for GPF to maintain its own inventory and thereby stock paper ready for immediate delivery to its customers.  (Id. at ¶ 15).  Accordingly, Gould rented a warehouse in Medley, Florida, sales from which were designated as warehouse sales.  (Id.).

By March 30, 2005, GPF had lost nearly $40,000 for the year.  (Id. at ¶ 16).  In April, Gould executives met with

- 2 -

defendants in New York to discuss changes to GPF's operations. (Id. at ¶ 17). The parties agreed at that meeting to set defendants' commission rates at 40% for mill direct sales and 30% for warehouse sales to reflect the additional costs Gould incurred by carrying and warehousing the GPF inventory. (Id.).

On June 16, 2006, defendants resigned from GPF. (Id. at ¶¶ 8-9). Thereafter, they began working for Anderson Paper, a division of Aaron Enterprises and one of Gould's competitors. (Id. at ¶ 10; see Matthews Decl. ¶ 9). Gould subsequently discovered that many of the sales defendants made after April 1, 2005 had been improperly classified in its computer system as mill direct rather than warehouse sales. (Compl. ¶¶ 22, 35; see Pl. Mem. 2-3). As a result, defendants purportedly received thousands of dollars in excess commissions. (Compl. ¶¶ 22, 35). In addition, some of defendants' customers owed outstanding payments that accrued interest between June 2006 and February 2007. (Id. at ¶¶ 24, 37). By letters dated April 10, 2007, Gould demanded that defendants repay Gould their excess commissions and various chargebacks. (Id. at ¶¶ 26, 39). Defendants did not comply with this demand. (Id. at ¶¶ 27, 40).

**B.    Procedural History**

Gould filed a complaint in this Court on June 28, 2007, seeking damages against Gomez in the amount of $99,111.17 and against Huempfner in the amount of $112,714.62, plus interest. (Id. at ¶¶ 41). It also charged Gomez with diverting orders to Anderson Paper while he was still employed by Gould. (Id. at ¶¶

- 3 -

32).  On August 14, 2007, defendants filed the instant motion to dismiss the complaint or to transfer the case to Florida.

DISCUSSION

**A.    Applicable Law**

      **1.    Forum Non Conveniens**

Under the common law doctrine of forum non conveniens, a court with proper jurisdiction and venue over a matter may refrain from hearing the case if another significantly more appropriate forum exists.  See Nationsbank of Florida v. Banco Exterior de Espana, 867 F. Supp. 167, 169 (S.D.N.Y. 1994) (citations omitted).  Evaluation of the forum non conveniens motion proceeds in several stages.  Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 70 (2d Cir. 2003).  First, the court determines the degree of deference to be accorded to a plaintiff's choice of forum, mindful that "[t]he more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice."  Iragorri v. United Techs. Corp., 274 F.3d 65, 71-72 (2d Cir. 2001) (en banc).  Next, the court determines whether an adequate alternative forum is available.  Id. at 73-74 (citations omitted).  Finally, if an alternative forum is available, the court must weigh private and public considerations to determine whether adjudication in the alternative forum is more appropriate.  Id.

- 4 -

The private interest factors essentially boil down to
the convenience of the litigants, and include "the relative ease
of access to sources of proof[,] availability of compulsory
process for attendance of unwilling, and the cost of obtaining
attendance of willing, witnesses . . . and all other practical
problems that make trial of a case easy, expeditious, and
inexpensive." Id. at 73-74 (citation omitted). Public interest
factors include administrative difficulties inherent when cases
are filed in congested courts rather than in their fora of
origin, local interest in resolving local controversies, and the
burden of jury duty on a community that has no connection to the
litigation. Id. at 74.

While the moving party bears the burden of showing that
an alternative forum is clearly more appropriate, Oil Basins Ltd.
v. Broken Hill Proprietary Co., 613 F. Supp. 483, 489 (S.D.N.Y.
1985), the decision to grant or deny the motion is within the
court's discretion. Piper Aircraft Co. v. Reyno, 454 U.S. 235,
257 (1981).

B.    **Motion to Transfer**

Under 28 U.S.C. § 1404(a), a court may transfer any
civil action to any other district where the case might have been
brought if the transfer serves "the convenience of parties and
witnesses, [and is] in the interest of justice." 28 U.S.C. §
1404(a); see Van Dusen v. Barrack, 376 U.S. 612, 616 (1964).
"The threshold question in deciding transfer of venue . . . is
whether the action could have been brought in the transferee

- 5 -

forum." <u>Millennium, L.P. v. Hyland Software, Inc.</u>, 03 Civ. 3900
(DC), 2003 WL 22928644, at *2 (S.D.N.Y. Dec. 10, 2003).  If this
is established, the district court generally should disturb the
plaintiff's choice of forum only if, on balance, the following
factors clearly favor transfer: (1) the convenience of witnesses;
(2) the convenience of the parties; (3) the locus of operative
facts; (4) the location of relevant documents and relative ease
of access to sources of proof; (5) the availability of process to
compel the attendance of unwilling witnesses; (6) the forum's
familiarity with the governing law; (7) the relative financial
means of the parties; (8) the weight afforded plaintiff's choice
of forum; and (9) trial efficiency and the interests of justice
generally.  <u>See</u> <u>Anadigics, Inc. v. Raytheon Co.</u>, 903 F. Supp.
615, 617 (S.D.N.Y. 1995).

     The burden rests on the moving party to make a "clear
and convincing" showing that transfer under Section 1404(a) is
proper.  <u>Millenium L.P. v. Dakota Imaging, Inc.</u>, No. 03 Civ. 1838
(RWS), 2003 WL 22940488, at *6 (S.D.N.Y. Dec. 15, 2003) (citation
omitted).

**B.    <u>Application</u>**

**A.    <u>Forum Non Conveniens</u>**

     The relevant factors do not support dismissal of
Gould's claims for forum non coveniens.

     First, Gould's choice of forum is entitled to at least
some deference, as there are multiple reasons that the law
recognizes as valid for choosing this forum: (1) the chosen forum

is convenient for Gould, a New York corporation whose executives
work in New York City, (2) Gould represents that its documents
and witnesses are located in New York, (3) the parties negotiated
defendants' commission rates at a meeting in New York, and (4)
there is no evidence, such as local laws favoring Gould's case,
defendant's unpopularity in the forum, or habitual generosity of
juries in the forum, to suggest that Gould was forum shopping
when it brought the claim in New York.

Second, Florida is an adequate alternative forum.

Third, however, defendants have not made a showing that
the public and private factors so overwhelmingly favor dismissal
as to override the deference to plaintiff's choice of forum.

As for the private factors, it does not appear that
Gould's chosen forum will significantly affect defendants' access
to evidence regarding their purportedly miscoded sales.  Gould
asserts that whether particular sales were properly designated as
mill direct or warehouse sales may be determined from its records
in New York.  (See Pl. Mem. 5).  Defendants have not contested
this assertion, nor specified that they require evidence
difficult to access from New York to address the issue.[1]  Neither
does it appear that proceeding in New York will so impede
defendants' access to evidence on chargebacks resulting from

---

[1]    Defendants apparently do not concede that the Manual
permits Gould to retroactively diminish their commissions.  (See
Def. Mem. 2 (conceding only that "it is alleged that a commission
can be adjusted based upon a customer's claims, deductions or
chargebacks")).  If there is indeed a dispute over the Manual's
meaning or authority, it is not one that lends itself to
resolution in one forum over the other.

customer claims and late payments as to warrant dismissal.
First, defendants' motion papers do not specifically allege that
Gould's records incorrectly denote the claims and payments in
question.  Second, should defendants seek evidence to challenge
the accuracy of those records, they may depose GPF's Florida
customers without transporting them to New York.  The relative
inconvenience defendants may face in eventually transporting and
compelling potential witnesses to testify does not outweigh the
Court's deference to Gould's forum, particularly when the parties
negotiated their commission terms in New York and where Gould's
headquarters, records and witnesses reside therein.

　　　　Defendants argue that transporting the witnesses and
documentary evidence necessary to oppose the diversion charges in
particular would prove so onerous as to warrant dismissal.  (See
Def. Mem. 4).  On balance, this argument fails to persuade.  The
complaint names two non-party companies involved in the alleged
diversion: Carribean Form Manufacturing ("CFM"), a Gould
customer, and Aaron Enterprises, to whom Gomez allegedly diverted
CFM's orders.  Neither is headquartered in Florida.  CFM is
located in Puerto Rico and Aaron Enterprises in a suburb of
Philadelphia closer to New York than to Florida.  (See Matthews
Decl. ¶ 18).  Accordingly, while defendants may prefer not to
proceed in New York, the private factors do not support their
motion to dismiss.

　　　　Neither do the public factors weigh in defendants'
favor.  Court congestion is not an issue in this Court.

- 8 -

Likewise, this case would not burden a jury with issues unrelated to local concerns; it involves the business dealings of a New York corporation headquartered in New York City, where the parties negotiated the contract provisions at issue.  As defendants have not demonstrated that Florida is a significantly more appropriate forum, the motion to dismiss is denied.

### B.   **Motion to Transfer**

Defendants' motion to transfer faces similar shortcomings and is likewise denied.  While Gould could have brought the action in Florida, defendants have not made a clear and convincing showing that transfer would serve the overall convenience of the parties and the interests of justice.

As before, Gould, its records and its witnesses are located in New York.  While defendants' potential witness list includes Florida-based customers and employees, it is not apparent that their testimony will prove so central as to warrant transfer.  Gould asserts, and defendants still do not refute, that whether it miscoded warehouse sales as mill direct may be determined from its records in New York.  Again, the diversion charge concerns customers based outside of Florida, the agreement over defendants' commission terms was negotiated in New York, and defendants have not demonstrated that Gould's forum choice deserves less deference or that the forum is unfamiliar with the governing law.

While defendants maintain that they may not have the ability to compel unwilling witnesses to New York and that Gould

- 9 -

bears a financial advantage, these assertions do not tip the overall balance in their favor. Defendants must demonstrate that a transfer would not just serve their interests, but clearly favor the overall interests of justice and efficiency. They have not met that burden. Gould's chosen forum is an appropriate one.

### CONCLUSION

For the foregoing reasons, defendants' motions are denied. Counsel for the parties shall appear for a pre-trial conference on January 25, 2008, at 10 AM.

SO ORDERED.

Dated:    New York, New York
          January 11, 2008

                                    _____
                                    DENNY CHIN
                                    United States District Judge

- 10 -